WATER COM'RS OF CITY OF BINGHAMTON v. CITY OF BINGHAM-
TON et al.

(Supreme Court, Appellate Division, Third Department.    May 3, 1916.)

MUNICIPAL CORPORATIONS ☞176(6)—WATER DEPARTMENT—REPEAL OF STAT-
UTE.

The city of Binghamton was incorporated by Laws 1867, c. 291. The
Water Act (Laws 1867, c. 780), enacted to enable the city to supply itself
with water, while not enumerating the water department in the list of
departments created by the charter, by its provisions as to the duties and
powers of the water commissioners closely related it to the city govern-
ment, so as to make it in effect a city department. The Second Class
Cities Law (Consol. Laws, c. 53) applicable to Binghamton on January 1,
1916, without specifically repealing the Water Act or its amendments, by
section 252 repealed all ordinances of the city, so far as inconsistent with
the chapter and provided by section 94 that, if the city owned and oper-
ated waterworks, the commissioner of public works should appoint a su-
perintendent to hold office during his pleasure and to manage the city's
waterworks under the direction of the commission. *Held* in an action
against the treasurer of the water commissioners and the commissioner of
public works to restrain their interference with plaintiffs as water com-
missioners, that the waterworks was in fact a city department, and that
the Water Act, as amended by Laws 1906, c. 588, was inconsistent with
the Second Class Cities Law, and hence was impliedly repealed thereby.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §
437; Dec. Dig. ☞176(6).]

Appeal from Special Term, Broome County.

Action by the Water Commissioners of the City of Binghamton
against the City of Binghamton, Hollis M. Gitchell, as Treasurer there-
of, and John A. Giles, as Commissioner of Public Works. From an
order overruling the demurrer interposed by the defendants to the
plaintiffs' complaint, defendants appeal. Order reversed, and demur-
rer sustained, with usual leave to plaintiff to plead over, on payment
of costs in the Appellate Division and in the court below.

Argued before KELLOGG, P. J., and HOWARD, WOODWARD,
and COCHRANE, JJ.

Maurice E. Page, Corp. counsel, of Binghamton, for appellants.

Curtiss, Keenan & Tuthill, of Binghamton (George B. Curtiss, of
Binghamton, of counsel), for respondents.

HOWARD, J.    On the 1st day of January, 1916, the city of Bing-
hamton, having attained a population of 50,000 inhabitants, automati-
cally, so to speak, became a city of the second class.    Chapter 55, Laws
1909.    Binghamton had previously existed as a city since April 9, 1867.
Chapter 291, Laws 1867.    The same Legislature which enacted the
first city charter for Binghamton, subsequently, and in the same year,
enacted a law entitled "An act to supply the city of Binghamton with
pure and wholesome water."    Chapter 780, Laws 1867.    Immediately
after the Second Class Cities Law became applicable to Binghamton,
and on the same day, the treasurer of the city made demands upon the
water commissioners that the funds of the waterworks be turned over
to him, and the commissioner of public works, at the same time de-

manded that the affairs, properties, custody, and control of the water-works be turned over to him. These demands the water commissioners refused to comply with. Alleging that the treasurer and commissioner of public works have threatened to usurp their functions, the water commissioners have brought an action against them and against the city to restrain the said city officials from interfering with the plaintiffs in the performance of their duties. The defendants have demurred to the complaint upon the grounds that it does not state facts sufficient to constitute a cause of action. The demurrer was overruled by the Special Term, and the matter comes here on appeal.

The Second Class Cities Law (chapter 53 of the Consolidated Laws, which I shall refer to as the charter) did not specifically repeal chapter 780 of the Laws of 1867 (which I shall speak of as the Water Act), nor specifically repeal any of its amendments. Did it repeal these acts by implication? That is the question here. By section 252 of the charter "all acts or parts of acts and ordinances of the city, in so far as inconsistent with the provisions of this chapter," are repealed. This forces us to determine whether the Water Act is inconsistent with the charter. Section 94 of the Second Class Cities Law provides:

"In case the city owns and operates a system of municipal waterworks, the commissioner of public works shall appoint, to hold office during his pleasure, a superintendent of waterworks who shall have under the direction of the commissioner the supervision, care, management and control of the water department and waterworks system of the city."

If it were to be conceded that the city of Binghamton, prior to and on the 1st day of January, 1916, owned and operated its system of waterworks, there could be no question here; for, if that were to be conceded, the waterworks system, by virtue of the provisions of section 94 of the charter above quoted, would pass under the "supervision, care, management and control" of the superintendent of waterworks.

An examination of the Water Act and its amendments leads quickly to the conclusion that the Binghamton water system was not the private property of a corporation. If, then, the system was not owned by the corporation known as the "Water Commissioners of the City of Binghamton," by whom was it owned? Inevitably we reach the conclusion that it was owned by the city of Binghamton. The Water Act, in every particular, was inextricably interlaced with the city interests, the city government, and the city charter. While the waterworks was not styled in the new city charter (chapter 751, Laws 1907) a department of the city, it was in fact a department. It was not enumerated in the list of departments by the new city charter, but it was created a department by the original Water Act. Let us note the most salient features of this act. The commissioners were required to meet at the office of the city clerk; the successors of the original commissioners were to be chosen by the electors of the city at a city election, public notice of which was to be given by the common council; the commissioners were required to take and file with the city clerk the constitutional oath of office, and give a bond to the city for the faithful performance of their duties; the treasurer of the water commissioners was also required to give a bond to be approved by the

mayor; judgments against the commissioners were to be deemed judgments against the city; the title to all waterworks property purchased by the commissioners was to be taken in the name of the city; all debts incurred were to be secured by loans upon the credit of the city; deficiencies arising by inability to pay interest upon the waterworks indebtedness, from the earnings of the waterworks, was to be paid by the city; an annual tax levy upon the city to replenish the sinking fund for the payment of the principal of the waterworks debt was provided for; by an amendment (chapter 588, Laws 1906) the commissioners are required to pay each year to the city treasurer 15 per cent. of the gross annual receipts of the waterworks to go towards the payment of the general bonded debt of the city.

In view of all these provisions, permeating every feature of the Water Act, can there be any question that the city owned the waterworks previous to and on January 1, 1916? And can there be any question that the city operated its water system? We think not. For some reason known to the wisdom of the Legislature, and citizens of Binghamton in 1867, the water system was provided for by an act separate from the city charter; nevertheless the ownership of the system was as clearly in the city and its operation and control were exercised as absolutely by the city, through duly elected officers, as though the Water Act had been a part of the city charter.

Having reached this conclusion it follows that the Water Act is inconsistent with the Second Class Cities Law; the former providing that the control of the system shall be vested in the water commissioners and the latter providing that the control shall be vested in the superintendent of waterworks. There are also other inconsistencies. Therefore the Water Act was repealed by implication by chapter 53 of the Consolidated Laws. The order overruling the demurrer should be reversed.

Order reversed, with costs, and demurrer sustained, with costs, with usual leave to plaintiffs to plead over, on payment of costs in this court and in the court below. All concur.